**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RALPH NADER; PETER MIGUEL
CAMEJO; ROBERT H. STIVER;
MICHAEL A. PEROUTKA; CHUCK
BALDWIN; DAVID W. PORTER,
            *Plaintiffs-Appellants,*

v.

KEVIN B. CRONIN, Chief Election
Officer, State of Hawaii,
            *Defendant-Appellee.*

No. 08-16444

D.C. No.
1:04-cv-00611-
ACK-LEK

OPINION

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

Argued and Submitted
June 17, 2010—Honolulu, Hawaii

Filed September 1, 2010

Before: Betty B. Fletcher, Harry Pregerson, and
Richard R. Clifton, Circuit Judges.

Per Curiam Opinion

13215

## COUNSEL

Daniel J. Treuden, The Bernhoft Law Firm, Milwaukee, Wisconsin, for the plaintiffs-appellants.

Aaron H. Schuland, Pearl City, Hawaii, for the defendant-appellee.

**OPINION**

PER CURIAM:

Independent candidates for president, denied access to Hawaii's ballot for the 2004 election, appeal the district court's holding that the relevant provisions governing such access do not violate the Equal Protection Clause or the First and Fourteenth Amendments. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

**BACKGROUND**

Hawaii law provides two ways for candidates to obtain access to the ballot for the presidential election. Haw. Rev. Stat. § 11-113. An independent, or nonpartisan, candidate must file an application along with a petition "containing the signatures of currently registered voters which constitute not less than one per cent of the votes cast in the State at the last presidential election" sixty days before the election. *Id.* § 11-113(c)(2). Political parties that have qualified to place candidates on the primary and general election ballots must file a sworn application with the chief election officer 60 days before the general election to have a candidate placed on the ballot. *Id.* § 11-113(c)(1). The application must include the candidate's name and address, a statement that the candidate meets the constitutional requirements for the office, and a "statement that the candidates are the duly chosen candidates of both the state and the national party, giving the time, place, and manner of the selection." *Id.*

Separate and apart from the rules governing placement on the ballot for the presidential election, Hawaii provides a method for parties to achieve "qualified party" status. *Id.* § 11-62. To qualify as a party, the proposed party must submit a petition 170 days before the next primary declaring the intention of the signers to form a statewide political party. *Id.* § 11-62(a). The petition must "[c]ontain the name, signature,

residence address, date of birth, and other information as determined by the chief election officer of currently registered voters comprising not less than one-tenth of one per cent of the total registered voters of the State as of the last preceding general election." *Id.* § 11-62(a)(3). After a party has achieved qualified party status by petition for three consecutive general election cycles, the party "shall be deemed a political party for the following ten-year period." *Id.* § 11-62(d). A party can be disqualified, however, if certain conditions are not met. *Id.* § 11-61.

None of the appellants who sought ballot access did so as a member of a party, but rather all followed the procedures for independent candidates. These candidates had to submit petitions with 3,711 signatures, the equivalent of one percent of the 371,003 votes cast in the 2000 presidential election, 60 days before the general election to qualify to appear on the ballot. Ralph Nader and his running mate, Peter Miguel Camejo, submitted 7,184 signatures, of which 3,124 were valid, falling short of the required number. Michael A. Peroutka and his running mate, Chuck Baldwin, also submitted nearly 7,200 signatures. Of those signatures, 3,471 were valid. As a result, although Nader, Camejo, Peroutka, and Baldwin submitted petitions by the date required, none of the candidates met the signature requirements of Hawaii Revised Statute § 11-113. Both the Nader/Camejo and Peroutka/Baldwin campaigns challenged the signature counts through administrative hearings, but did not qualify to appear on the ballot. Before the general election, the appellants appealed the administrative decision in both state court and federal court, the resolution of which is not at issue in this appeal. At the same time, the appellants challenged the constitutionality of the provisions in federal court. The district court rejected these claims, granting summary judgment in favor of Hawaii's Chief Election Officer. The candidates appeal that decision.

## DISCUSSION

We review de novo questions of law, including constitutional rulings, resolved on summary judgment. *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 689 (9th Cir. 2010).

**[1]** "The Constitution provides that States may prescribe '[t]he Times, Places and Manner of holding Elections for Senators and Representatives,' and the Court therefore has recognized that States retain the power to regulate their own elections." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting U.S. Const. Art. I, § 4, cl. 1). In fulfilling this role, states "invariably impose some burden upon individual voters" in creating election laws. *Id.* "The Supreme Court has held that when an election law is challenged, its validity depends on the severity of the burden it imposes on the exercise of constitutional rights and the strength of the state interests it serves." *Nader v. Brewer*, 531 F.3d 1028, 1034 (9th Cir. 2008). In considering a constitutional challenge to an election law, we "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.' " *Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). Therefore, "the severity of the burden the election law imposes on the plaintiff's rights dictates the level of scrutiny applied by the court." *Id.* (citing *Burdick*, 504 U.S. at 434). "[A]n election regulation that imposes a severe burden is subject to strict scrutiny and will be upheld only if it is narrowly tailored to serve a compelling state interest." *Id.* at 1035 (citing *Burdick*, 504 U.S. at 434). A state may justify election regulations imposing a lesser burden by demonstrating the state has "important regulatory interests." *Id.* (citing *Burdick*, 504 U.S. at 434).

**[2]** On its own, the burden on independent presidential candidates seeking access to Hawaii's ballot is low. Candi-

dates need obtain the signatures of only one percent of the number of voters in the previous presidential election. They have until 60 days before the general election to submit the required signatures. We have little trouble concluding that, in isolation, the burden on independent candidates for president and vice-president is minimal. *See Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (upholding requirement that independent candidates demonstrate "a significant modicum of support" by filing a petition with signatures from five percent of the number of voters registered in the last election for the office sought); *see also Am. Party of Texas v. White*, 415 U.S. 767 (1974) (upholding requirement that independent candidates file a petition signed by one to five percent of registered voters depending on the office sought and capping the requirement at 500 signatures for district office); *Nader v. Connor*, 332 F.Supp.2d 982, 987 (W.D.Tex. 2004) ("Requiring that an independent presidential candidate demonstrate that voters equal in number to one percent of those who voted for president in the last presidential election favor placing the candidate on the ballot, does not place an unreasonable burden on the candidate. . . ."), *aff'd* 388 F.3d 137, 137-38 (5th Cir. 2004) (affirming "[e]ssentially for the reasons as well stated in the district court's memorandum opinion").

**[3]** Appellants argue, however, that we must examine the burden as compared to the burden for qualifying as a party, relying on the disparity in the signature requirements. Independent candidates for president must obtain valid signatures from registered voters totaling one percent of the number of ballots cast in the previous presidential election. Haw. Rev. Stat. § 11-113(c)(2). Groups seeking to qualify as new parties need signatures from only one-tenth of one percent of all registered voters. *Id.* § 11-62(a)(3).

In previously examining differing treatments of minor and major political parties, we decided that "[i]n determining the nature and magnitude of the burden that [the state's] election

procedures impose on the [minor party], we must examine the entire scheme regulating ballot access." *Libertarian Party of Wash. v. Munro*, 31 F.3d 759, 761-62 (9th Cir. 1994). "The [appellants] have the initial burden of showing that [the state's] ballot access requirements seriously restrict the availability of political opportunity." *Id.* at 762. Such an analysis is particularly important where, for instance, restrictions on who may sign a petition exist, where the timeframe in which to obtain the signatures is particularly short, or where the deadline for filing the petition is particularly early. Appellants do not rely on any facts along those lines here and, indeed, Hawaii does not impose such restrictions.

**[4]** Appellants here have failed to show Hawaii's election scheme imposes a severe burden on independent candidates for president even in light of an examination of Hawaii's regulatory scheme as a whole. In arguing otherwise, appellants gloss over important facts. For instance, in addition to qualifying as a party 170 days before the primary, Haw. Rev. Stat. § 11-62, qualified party candidates must show they are "the duly chosen candidates of *both the state and the national party*." *Id.* § 11-113(c)(1) (emphasis added). Moreover, the one percent signature requirement applies only to independent candidates running for president. Other statutory provisions govern independent candidates in state races. The provisions for establishing qualified party status, however, apply regardless of the office sought. Therefore, even in comparison to the requirements placed on minor party candidates, we cannot say that the burden on independent candidates for president imposes a severe burden. As a result, strict scrutiny does not apply.

**[5]** Having determined the level of scrutiny we will apply to appellants' claims, we turn now to the specific challenges. The state need demonstrate only a legitimate state interest. *Libertarian Party of Wash.*, 31 F.3d at 763 ("Because there is at most a *de minimis* burden on the Libertarians' constitutional rights, Washington need demonstrate only that its elec-

tion schedule is rationally related to a legitimate state interest."). The Supreme Court consistently has held that states have "a legitimate interest in regulating the number of candidates on the ballot . . . to prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at least a strong plurality, of those voting, without the expense and burden of runoff elections." *Bullock v. Carter*, 405 U.S. 134, 145 (1972). These interests justify Hawaii's one-percent requirement imposed on independent candidates for president.

[6] We find appellants' Equal Protection Clause argument unpersuasive as well. If we assume that the Equal Protection Clause analysis applies — a question that is not without doubt given that partisan and independent candidates are not necessarily "similarly situated," *see Van Susteren v. Jones*, 331 F.3d 1024, 1027 (9th Cir. 2003) — the appellants' equal protection argument here relies on the premise that Hawaii law imposes a higher burden on independent candidates for president than on candidates chosen as the nominee of a qualified party. The Supreme Court addressed a similar argument in *Jenness*. Appellants' argument, however, relies on "a premise that cannot be uncritically accepted." *Jenness*, 403 U.S. at 440. As in *Jenness*, Hawaii has created alternative means for obtaining access to the presidential ballot that are not "inherently more burdensome." *See id.* at 441, *See Erum v. Cayetano*, 881 F.2d 689, 695 (9th Cir. 1989), *overruled on other grounds as recognized in Lightfoot v. Eu*, 964 F.2d 865, 868 (9th Cir. 1992). Therefore, Hawaii's scheme does not violate equal protection. *See Jenness*, 403 U.S. at 440-41 ("We cannot see how Georgia has violated the Equal Protection Clause of the Fourteenth Amendment by making available these two alternative paths [winning the primary of a political party, or circulating nominating petitions as an independent candidate], neither of which can be assumed to be inherently more burdensome than the other."). Accordingly, Hawaii's regulatory scheme governing access to the presidential ballot does not violate the Equal Protection Clause.

## CONCLUSION

Because independent presidential candidates are not affiliated with any party, they cannot receive their party's nomination or be asked to show support from a national party. Hawaii therefore has imposed a reasonable one percent signature requirement on independent candidates who wish to appear on the presidential ballot. The one percent signature requirement does not impose a severe burden on independent candidates for president either alone or in comparison to the route qualified party candidates must take. Nor does this scheme run afoul of the Equal Protection Clause. Therefore, we affirm the district court's holding that Hawaii's presidential ballot access scheme is constitutional.

**AFFIRMED.**