**Motion for En Banc Consideration Denied as Moot; Opinion of September 8, 2020 Withdrawn; Affirmed as Modified in Part, Reversed and Remanded in Part, Stay Lifted, and Substitute Opinion filed October 27, 2020.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-19-00969-CV**
**NO. 14-20-00078-CV**

---

**RUTH R. HUGHS, IN HER OFFICIAL CAPACITY AS SECRETARY OF STATE OF THE STATE OF TEXAS, Appellant**

**V.**

**NEAL DIKEMAN, SHAWN KELLY, ROY ERIKSEN, JARED WISSEL, SCOTT FORD, BILLY PIERCE, CHRISTINA FORD, CHARLIE STEVENS, AND NEKO ANTONIOU, Appellees**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-76841**

---

## S U B S T I T U T E   O P I N I O N

We deny as moot the appellees' motion for en banc consideration. We withdraw our opinion dated September 8, 2020 and issue the following substitute

opinion. Our disposition remains the same.

Neal Dikeman, Shawn Kelly, Roy Eriksen, Jared Wissel, Scott Ford, Billy Pierce, Christina Ford, Charlie Stevens, and Neko Antoniou (collectively, "Appellees") sued Ruth R. Hughs in her official capacity as Secretary of State of the State of Texas asserting claims and requesting injunctive relief in connection with Texas Election Code section 141.041 and its accompanying advisory. Section 141.041 requires political candidates nominated by the convention process to either pay a filing fee or submit a signature petition to appear on the general-election ballot and the related advisory sets the deadline to comply with these requirements. Appellees, as members of and candidates within Texas's Libertarian party, assert that these requirements unreasonably burden minor-party candidates and those that plan to vote for them.

The trial court granted Appellees' request for a temporary injunction and enjoined Hughs from enforcing section 141.041 and the related advisory. The trial court also denied Hughs's plea to the jurisdiction. Hughs filed separate appeals with respect to these decisions, which were consolidated into a single appeal.

For the reasons below, we affirm the trial court's temporary injunction in part as modified and reverse and remand in part. We conclude the trial court erred insofar as it (1) denied Hughs's plea to the jurisdiction with respect to Appellees' claim challenging the constitutionality of section 141.041 and (2) improperly enjoined the enforcement thereof. We further conclude the trial court (1) properly denied Hughs's plea to the jurisdiction with respect to Appellees' claim challenging the advisory and (2) did not abuse its discretion by temporarily enjoining the advisory's enforcement in part.

2

*Overview of the Statutory Scheme*

Under the Texas Election Code, a political party in Texas nominates its candidates for public office by either a primary or a convention. *See* Tex. Elec. Code Ann. ch. 171-74, 181-82. A political party whose candidate in the last gubernatorial election received at least 20% of the vote (a "major party") must nominate its general-election candidates through a primary election. *Id*. § 172.001. A party whose candidate in the last gubernatorial election received less than 2% of the vote (a "minor party") must nominate its general-election candidates through a convention. *Id*. §§ 172.001, .002, 181.003. Parties whose candidates in the most recent gubernatorial election received at least 2% but less than 20% of the total number of votes may nominate their general-election candidates through either a primary or a convention. *Id*. § 172.002(a).

To participate in a primary election, a major-party candidate must submit an application accompanied by either a filing fee or a signature petition. *Id*. § 172.021(a), (b). The amount of the filing fee or the number of required signatures varies depending on which office the candidate seeks. *See id*. §§ 172.024, .025. The filing fees are paid to either the county or the state chair of the major party with which the candidate wishes to run and are used to fund the primary election. *See id*. §§ 173.061-.063. Nominees selected through the primary process do not have to pay an additional filing fee or submit a second signature petition to guarantee their placement on the general-election ballot.

House Bill 2504 was signed into law in June 2019 and made two changes affecting minor-party candidates' access to the general-election ballot. *See* Act of May 20, 2019, 86th Leg., R.S., ch. 822, §§ 1-3, 2019 Tex. Gen. Laws (codified at Tex. Elec. Code Ann. §§ 141.041, 181.005(c)). Before the passage of Bill 2504,

minor parties had two avenues available to qualify their nominees for the general-election ballot:

(1)     file with the Secretary of State, no later than the 75th day after the date of the precinct conventions, lists of precinct convention participants indicating that the number of participants equals at least one percent of the total number of votes received by all candidates for governor in the most recent gubernatorial election; or

(2)     in the prior general election, the minor party put forth a nominee for a statewide office who received a number of votes equal to at least five percent of the total number of votes received by all candidates for that office.

*See* Act of May 13, 1985, 69th Leg., R.S., ch. 211, § 1, 1985 Tex. Gen. Laws 802, 996 (codified at Tex. Elec. Code Ann. § 181.005(a), (b)).  House Bill 2504 was codified in section 181.005(c), which modified the second option by lowering the threshold from 5% to 2%.  *See* Tex. Elec. Code Ann. § 181.005(c).

House Bill 2504 was also codified in section 141.041, which requires "a candidate who is nominated by convention" to fulfill one of two requirements to guarantee that candidate's placement on the general-election ballot:

(1)     pay a filing fee to either the Secretary of State or the county judge; or

(2)     submit to the Secretary of State or county judge a signature petition.

*Id.* § 141.041(a).  The amount of the filing fee and the number of required signatures are the same as those required of major-party candidates seeking placement on the primary-election ballot.  *See id.* §§ 141.041(b), (e), 172.024, 172.025.  But whereas fees paid by major-party candidates are paid to the parties' state or county chairs (*see id.* §§ 173.061-.063), the fees from minor-party candidates are paid to the Secretary of State or the county judge and are credited to either the state or county general fund.  *See id.* § 141.041(c), (d).  Section 141.041 does not set a deadline for

4

compliance but states that the Secretary of State "shall adopt rules as necessary to implement this section." *Id*. at (f).

On August 31, 2019, Hughs promulgated Election Advisory No. 2019-13 (the "Advisory"). Referencing House Bill 2504's enactment in section 181.005(c) — which lowered the minimum threshold for a party nominating by convention to guarantee its candidates a place on the general-election ballot — the Advisory states that both the Libertarian party and the Green party "met this threshold" and are entitled to have their candidates on Texas's 2020 general-election ballot. The Advisory also provides as follows with respect to section 141.041's filing fee/signature petition requirement for "a candidate who is nominated by convention":

- Candidates seeking nomination by the convention process are required to deliver section 141.041's filing fee or signature petition by December 9, 2019.[1]

- Candidates who do not comply with this deadline are not eligible for nomination by the party convention process.

Election Advisory No. 2019-13. Under Texas Election Code section 181.061, a party nominating by convention must hold its conventions in March and April of the election year.[2] *Id*. § 181.061. Therefore, the deadline prescribed by the Advisory required these parties' candidates to submit their filing fee or signature petition approximately three months before the 2020 nominating conventions.

***The Underlying Dispute***

The Libertarian party's nominee in the most recent gubernatorial election

---

[1] December 9, 2019 also was the deadline for minor-party candidates to submit their application for nomination by a convention. *See* Tex. Elec. Code Ann. §§ 172.023(a), 181.033(a).

[2] Due to the COVID-19 pandemic, the Libertarian party's 2020 state convention was moved to August 2020.

5

received less than 20% of the vote; as permitted, it selects its general-election nominees through a convention. *See id*. §§ 172.002, 181.003. Accordingly, the Libertarian party's candidates are subject to section 141.041 and the Advisory's December 9, 2019 deadline for compliance with this section's requirements.

Appellees sued Hughs, Lina Hidalgo (in her official capacity as county judge of Harris County), and Diane Trautman (in her official capacity as county clerk of Harris County) asserting claims and requesting injunctive relief in connection with section 141.041 and the Advisory.[3] Specifically, Appellees asserted that (1) section 141.041 violates the Texas Constitution, and (2) the Advisory conflicts with the Texas Election Code and the Texas Constitution.

The trial court held a hearing on Appellees' application for a temporary injunction in November 2019 and heard testimony from appellee Neal Dikeman. Dikeman discussed the burdens imposed by section 141.041 and the Advisory on minor-party candidates and those that plan to vote for them.

On December 2, 2019, the trial court signed an order granting a temporary injunction. In the section labeled "Findings", the trial court concluded that (1) section 141.041 constitutes an actual or threatened violation of the United States and Texas Constitutions; (2) evidence shows the Advisory conflicts with the Texas Election Code; and (3) evidence shows the Advisory implicates Appellees' rights under the United States and Texas Constitutions.[4] In relevant part, the trial court's order states as follows:

The Court **ORDERS** that Defendant Hughs is temporarily enjoined

---

[3] Hidalgo and Trautman are not parties to this appeal.

[4] When, as here, no findings of fact or conclusions of law are filed other than those in the order granting the temporary injunction, the trial court's judgment must be upheld on any legal theory supported by the record. *See Pinnacle Premier Props., Inc. v. Breton*, 447 S.W.3d 558, 562 n.6 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

6

from refusing to accept or rejecting applications for nomination from third-party candidates on the grounds that the applicant did not pay a filing fee or submit a petition in lieu thereof at the time of filing or at any other time.

\*          \*          \*

The Court **ORDERS** that Defendant Hughs is temporarily enjoined from refusing to certify third-party nominees for the general-election ballot on the grounds that the nominee did not pay a filing fee or submit a petition in lieu thereof at the time of filing or at any other time.

(emphases in original). Hughs timely filed an interlocutory appeal challenging the trial court's temporary injunction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4).

After the temporary injunction was entered, Hughs filed a plea to the jurisdiction asserting sovereign immunity barred Appellees' claims. The trial court held a hearing and denied Hughs's plea in a written order signed January 13, 2020. Hughs then timely filed a second interlocutory appeal and the two appeals were consolidated.

## ANALYSIS

Hughs asserts two issues on appeal: (1) sovereign immunity deprives the trial court of jurisdiction, and (2) Appellees did not make the showing necessary to warrant injunctive relief. Before we address these issues, we take up *sua sponte* the threshold issues of standing and mootness. *See San Jacinto River Auth. v. Ogletree*, 594 S.W.3d 833, 838 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (because subject matter jurisdiction is essential to the authority of a court to decide a case, we may address its existence regardless of whether the parties challenge it).

7

## I.     Plaintiffs Have Standing and This Case Is Not Moot.

### A.     Governing Principles and Standard of Review

Standing is a component of subject matter jurisdiction and a constitutional prerequisite to maintaining suit in either state or federal court. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 151 n.60 (Tex. 2012); *Country Cmty. Timberlake Vill., L.P. v. HMW Special Util. Dist. of Harris Cty.*, 438 S.W.3d 661, 667 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Standing is determined at the time suit is filed and focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445-46 (Tex. 1993). Generally, standing requires a plaintiff to show that "he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001). This injury must be "concrete and particularized, actual or imminent, not hypothetical." *Garcia v. City of Willis*, 593 S.W.3d 201, 206 (Tex. 2019) (internal quotation omitted). Whether an injury meets these requirements "depends on the context in which the claim is asserted." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 581 (Tex. 2013).

Where a plaintiff seeks to challenge a statute, the requirements for standing differ slightly. *See Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 77 (Tex. 2015). Specifically, plaintiffs must (1) show they have suffered some actual or threatened injury under the statute; and (2) contend that the statute unconstitutionally restricts their rights. *Id*.

Like standing, mootness is a threshold issue that implicates the court's subject matter jurisdiction. *See, e.g., Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642

8

(Tex. 2005); *see also In re H&R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 899 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). A case becomes moot if a controversy ceases to exist or if the parties lack a legally cognizable interest in the outcome. *Allstate Ins. Co.*, 159 S.W.3d at 642; *Robinson v. Alief Indep. Sch. Dist.*, 298 S.W.3d 321, 324-25 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). A suit can become moot at any time, including on appeal, and courts have an obligation to take into account intervening events that may render a dispute moot. *Heckman*, 369 S.W.3d at 166-67.

Whether a trial court has subject matter jurisdiction is a question of law we review *de novo*. *Harris Cty. Flood Control Dist. v. Great Am. Ins. Co.*, 309 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 2010, no pet.). When we *sua sponte* review a plaintiff's standing, we construe the petition in favor of the plaintiff and, if necessary, review the entire record to determine if any evidence supports standing. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *see also Webb v. Voga*, 316 S.W.3d 809, 812 (Tex. App.—Dallas 2010, no pet.). Generally, courts must analyze the standing of each individual plaintiff to bring each claim he or she alleges. *See Heckman*, 369 S.W.3d at 152. But where, as here, multiple plaintiffs seek the same injunctive or declaratory relief, one plaintiff's demonstration of its standing obviates the need for the others to do so. *See Patel*, 469 S.W.3d at 77-78; *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 6 & n.9 (Tex. 2011).

## B. Application

Appellees' first amended petition lists nine plaintiffs and states that seven of them seek the Libertarian party's 2020 nominations for various Texas county, district, and state offices. If these plaintiffs secure the party's 2020 nominations, they would be required to comply with the requirements in section 141.041 and the Advisory to guarantee their placement on the general-election ballot. Therefore, at

9

the time their suit was filed, these plaintiffs had a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome, *i.e.*, whether or not they would be required to comply with section 141.041 and the Advisory. *See, e.g., Patel*, 469 S.W.3d at 78 (plaintiffs had standing to challenge the statute because "they have suffered some actual restriction under the challenged statute"); *Fin. Comm'n of Tex.*, 418 S.W.3d at 582-83 (homeowners had standing to challenge commission's interpretation of certain home equity amendments because their rights were "threatened" by "misinterpretations of constitutional requirements"); Tex. Elec. Code Ann. § 273.081 (person in danger of being harmed by threatened violation of this code entitled to appropriate injunctive relief). In addition to this particularized injury, Appellees' first amended petition alleges that section 141.041 unconstitutionally restricts their rights. Accordingly, at the time suit was filed, Appellees had standing to maintain their claims challenging section 141.041 and the Advisory. *See Austin Nursing Ctr., Inc.*, 171 S.W.3d at 848; *Tex. Ass'n of Bus.*, 852 S.W.2d at 445-46.

Turning to the issue of mootness, Appellees' counsel was questioned during oral argument regarding the status of the candidates' campaigns. In a letter to the court, Appellees' counsel stated that five of the Appellees have secured the Libertarian party's nominations for the 2020 general election: Shawn Kelly for U.S. Congressional District 7; Roy Eriksen for U.S. Congressional District 10; Jared Wissel for Texas Senate District 11; Neko Antoniou for Texas Congressional District 127; and Billy Pierce for Harris County Tax Assessor Collector and Voter Registrar. Because these individuals are eligible to be placed on the 2020 general-election ballot, they maintain a legally cognizable interest in the outcome of this litigation. *See Allstate Ins. Co.*, 159 S.W.3d at 642. Accordingly, the Appellees' case is not moot.

## II. The State of Texas Is Not Immune From This Suit.

### A. Summary

Arguing that the trial court erroneously denied her plea to the jurisdiction, Hughs asserts that sovereign immunity bars Appellees' claims challenging section 141.041 and the Advisory. In response, Appellees contend that the State lacks sovereign immunity because they: (1) challenged the validity of a statute; (2) sought equitable relief for violations of the Texas Constitution; and (3) alleged conduct of a state official was *ultra vires*.

### B. Sovereign Immunity and Relevant Exceptions

Sovereign immunity protects the State and its political subdivisions from lawsuits for damages unless immunity has been waived by the Legislature. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). Like standing and mootness, sovereign immunity implicates the trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Tex. Transp. Comm'n v. City of Jersey Vill.*, 478 S.W.3d 869, 875 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). We review *de novo* a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 228. Where, as here, the jurisdictional challenge is based on the pleadings, we "construe the pleadings liberally in favor of the plaintiff[] and look to the pleader[']s intent." *Id*. at 226.

The Texas Supreme Court has recognized that sovereign immunity does not bar suit in at least three relevant circumstances:

(1)     when a claim challenges the validity of a statute;[5]

(2)     when a claim seeks equitable relief to redress violations of the Texas

---

[5] *See Tex. Transp. Comm'n*, 478 S.W.3d at 876 (citing *Sawyer Trust*, 354 S.W.3d at 388).

Constitution;[6] and

(3)      when a claim seeks to determine or protect a party's rights against a state official who has acted without legal or statutory authority (commonly referred to as an *ultra vires* claim).[7]

## C.      Analysis of Sovereign Immunity and Relevant Exceptions

### 1.      Claims Challenging the Validity of a Statute

#### a.      Law

Sovereign immunity is inapplicable when a suit challenges the constitutionality of a statute and seeks only equitable relief. *See Patel*, 469 S.W.3d at 75-76. But this immunity is waived only to the extent the plaintiff pleads a viable constitutional claim. *See Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8, 13, 14 (Tex. 2015); *Houston Firefighters' Relief & Ret. Fund v. City of Houston*, 579 S.W.3d 792, 800-01 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). To satisfy this showing, plaintiffs must do more than merely name a cause of action and assert the existence of a constitutional violation. *See generally Klumb*, 458 S.W.3d at 13-14 (concluding the appellants did not present a viable equal protection claim where (1) neither a suspect classification nor a fundamental right was involved, and (2) the appellee's actions were rationally related to certain government interests); *Andrade*, 345 S.W.3d at 11 (considering substance of equal protection claim against Secretary of State in reviewing ruling on a plea to the jurisdiction and explaining

---

[6] *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (per curiam). *See also* Tex. Const. art. 1, § 2 ("All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit. The faith of the people of Texas stands pledged to the preservation of a republican form of government, and, subject to this limitation only, they have at all times the inalienable right to alter, reform or abolish their government in such manner as they may think expedient.").

[7] *See Tex. Transp. Comm'n*, 478 S.W.3d at 875-76 (citing *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) (per curiam); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002)).

that Secretary retained immunity unless the plaintiffs pleaded a "viable claim").

Laws that impose burdens upon the right to vote are not automatically subject to strict scrutiny; instead, such laws are analyzed under "a more flexible standard", *i.e.*, a weighing of (1) "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against (2) "the precise interests put forward by the State as justifications for the burden imposed by its rule" (taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights"). *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 213-14 (1986) and *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

### b.    The Nature of Appellees' Constitutional Challenge

In their first amended petition, Appellees assert that the burdens imposed by section 141.041 "are unconstitutional as applied and facially" under the Texas Constitution.  An as-applied challenge concedes that the statute is generally constitutional but claims that it operates unconstitutionally as to the challenger due to their specific circumstances. *8100 N. Freeway, Ltd. v. City of Houston*, 363 S.W.3d 849, 855 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  In contrast, a facial challenge alleges that a statute is always unconstitutional in all its applications. *Id*.

Despite their allegation, the substance of Appellees' arguments does not raise an as-applied constitutional challenge to section 141.041 because Appellees do not argue that section 141.041 operates unconstitutionally with respect to their specific circumstances.  Instead, the burdens Appellees cite (*i.e.*, paying a filing fee or submitting a signature petition to guarantee placement on the general-election ballot) would be borne by *all* persons subject to section 141.041's requirements — not just Appellees.  Moreover, Appellees do not contend that section 141.041 is generally

constitutional — they argue that it always operates unconstitutionally. Therefore, we construe Appellees' arguments addressing section 141.041 as raising only a facial challenge with respect to the statute's constitutionality. *See id.*

To mount a successful facial challenge, a plaintiff must establish that "'no set of circumstances exists under which the statute would be valid.'" *In re G.X.H.*, 584 S.W.3d 543, 550 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (quoting *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015)). If a statute is constitutional under any possible state of facts, we "should presume that such facts exist without making a separate investigation of the facts or attempting to decide whether the Legislature has reached a correct conclusion with respect to the facts." *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 625 (Tex. 1996); *see also Lund v. Giauque*, 416 S.W.3d 122, 127 (Tex. App.—Fort Worth 2013, no pet.) (recognizing that a facial challenge "does not look to the specific facts of the case at hand"). Therefore, for a facial challenge, we consider the statute as written rather than how it operates in practice. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). Because a facial challenge attacks a statute's validity in all scenarios, "it is 'the most difficult challenge to mount successfully.'" *Id.* (quoting *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) (en banc)).

### c. Application

Appellees allege that section 141.041's requirements for placement on the general-election ballot violate the Texas Constitution. *See* Tex. Const. art. 1, §§ 3, 8, 19, 27. We evaluate such challenges to ballot access laws under the Texas Constitution as we would a similar challenge under the First and Fourteenth Amendments to the United States Constitution, by using the balancing framework in *Anderson* as refined by *Burdick*. *See also State v. Hodges*, 92 S.W.3d 489, 496-

14

502 (Tex. 2002).

In *Anderson*, the Supreme Court instructed lower courts to evaluate election laws by (1) considering "the character and magnitude of the asserted injury" posed to the plaintiff's asserted rights and (2) weighing that consideration against the interest put forward by the state. 460 U.S. at 788. In *Burdick*, the Court clarified that when a state regulation imposes severe restrictions, the regulation must be narrowly drawn to advance a compelling government interest. 504 U.S. at 434. But when a law imposes only reasonable and nondiscriminatory restrictions, the state's important regulatory interests usually suffice to justify the restrictions. *Id*. This approach has been described as a "'sliding scale' — the more severe the burden imposed, the more exacting [the court's] scrutiny; the less severe, the more relaxed [the court's] scrutiny." *Ariz. Libertarian Party v. Hobbs*, 925 F.3d 1085, 1090 (9th Cir. 2019), *cert. denied*, 2020 WL 3146596, __ U.S. __ (June 15, 2020); *accord Fish v. Schwab*, 957 F.3d 1105, 1124 (10th Cir. 2020) (quoting Edward B. Foley, *Due Process, Fair Play, and Excessive Partisanship: A New Principle for Judicial Review of Election Laws*, 84 U. Chi. L. Rev. 655, 675 (2017)), *pet. for cert. filed*, (U.S. Aug. 3, 2020) (No. 20-109); *Daunt v. Benson*, 956 F.3d 396, 408 (6th Cir. 2020); and *Barr v. Galvin*, 626 F.3d 99, 109 (1st Cir. 2010) (citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)). *See also Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 210 (2008) (Souter, J., dissenting).

### i.    *Character and Magnitude of the Asserted Injury*

Appellees assert that section 141.041 unconstitutionally discriminates against minor parties and their nominees by requiring them to pay a filing fee or submit a signature petition to guarantee their placement on the general-election ballot — a requirement not imposed on major-party nominees. Appellees analogize these circumstances to those in *Harper v. Virginia State Board of Elections*, 383 U.S. 663

(1966), and argue that *Harper* mandates a strict scrutiny standard of review.

The plaintiffs in *Harper* sued for a declaration that Virginia's poll tax was unconstitutional. *Id*. at 664. Reviewing these challenges, the Court stated that, "where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined." *Id*. at 670. Concluding that a state violates the Fourteenth Amendment "whenever it makes the affluence of the voter or payment of any fee an electoral standard", the Court reversed the lower court's dismissal of the plaintiffs' claims challenging the poll tax. *Id*. at 666, 670.

But *Harper* is distinguishable from the facts presented here. Unlike the poll tax in *Harper*, section 141.041 does not condition access to the general-election ballot solely on the payment of a fee; it also gives minor-party nominees the option of submitting a signature petition. *See* Tex. Elec. Code Ann. § 141.041(a). Therefore, unlike the statute at issue in *Harper*, section 141.041 does not impose "the ***requirement*** of fee paying". *Harper*, 383 U.S. at 668 (emphasis added). Further, the specific conclusions reached in *Harper* were based in large part on the plaintiffs' status as voters, not as candidates or nominees. *See id*. at 666 ("Voter qualifications have no relation to wealth nor to paying or not paying this or any other tax."); *see also id.* at 670 ("wealth or fee paying has, in our view, no relation to voting qualifications"). Because of these distinctions, *Harper* does not compel the application of strict scrutiny here.

Section 141.041 primarily operates with respect to nominees seeking access to the general-election ballot. But candidacy is not a fundamental right and "the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" *Clements v. Fashing*, 457 U.S. 957, 963 (1982) (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)); *see also Hodges*, 92 S.W.3d at 498 ("We agree

16

with Appellants that candidacy is not a fundamental right."). Applying these principles, our sister court of appeals analyzed a claim challenging Texas Election Code section 172.021(e) (requiring a candidate for the office of justice of the peace in a county with a population of more than 1.5 million to obtain 250 signatures to be entitled to a place on the primary-election ballot). *See Risner v. Harris Cty. Republican Party*, 444 S.W.3d 327, 334 (Tex. App.—Houston [1st Dist.] 2014, no pet.). This signature requirement does not apply to candidates seeking the office of justice of the peace in a county with a population less than 1.5 million. *See* Tex. Elec. Code Ann. § 172.021(e).

Concluding that this requirement did not "interfere with a fundamental right or discriminate against a subject class," the court held that section 172.021(e) did "not impose a significant burden on a person's right to run for office." *Risner*, 444 S.W.3d at 338. Weighing this restriction against the state's purported interests, the court held that it was "relationally related to a legitimate state interest in preventing or discouraging an unqualified or frivolous candidate from obtaining a place on the ballot." *Id*.

The plaintiff in *Nader v. Connor*, 332 F. Supp. 2d 982, 986 (W.D. Tex. 2004), also challenged certain Texas candidacy regulations and, like Appellees here, argued that certain disparities rendered the challenged regulations "discriminatory and unconstitutionally burdensome." Specifically, the provisions at issue required an independent candidate for president to obtain approximately 64,000 petition signatures in 62 days to guarantee a place on the general-election ballot.[8] *Id*. at 985. In contrast, a minor-party candidate was required to obtain approximately 45,000

---

[8] Specifically, the provision at issue required an independent candidate running in the presidential election to obtain a petition with a number of signatures equal to one percent of the total vote received in the state by all candidates for president in the most recent presidential election. *See* Tex. Elec. Code Ann. § 192.032(d). In 2004, this number was approximately 64,000.

signatures in a period of 76 days to secure their placement on the general-election ballot.[9] *Id*. The plaintiff argued that these restrictions "violate[d] his civil rights by discriminating against him in favor of the candidates of minor political parties." *Id*. at 986.

Viewing Texas's election scheme "in [its] totality", the district court held that these restrictions did not warrant strict scrutiny under the *Anderson/Burdick* balancing test. *See id*. at 989. Although the ballot-access requirements differed between independent and minor-party candidates, the court concluded that these requirements nonetheless were "similar in degree". *Id*. at 988. The court also pointed out that minor parties were subject to a broader regulatory scheme than independent candidates and were required to establish a state executive committee, a county executive committee for convention-hosting counties, and precinct chairs for convention-hosting precincts. *Id*. at 989. Minor-party candidates also were required to announce their candidacies at an earlier time and participate in the convention process. *Id*. In contrast, "[a]n independent candidate ha[d] only one requirement to meet to secure ballot access for a presidential election in Texas": filing an application and the accompanying signature petition. *Id*. (citing Tex. Elec. Code Ann. § 192.032(c), (d)). These variances, the court concluded, were "not sufficiently severe to warrant strict scrutiny." *Id*.

Against this backdrop, we conclude that section 141.041, as written, imposes only reasonable and nondiscriminatory restrictions that do not require a strict scrutiny standard of review. *See Burdick*, 504 U.S. at 434. Although section 141.041's burdens are not insignificant, they are identical to the requirements of

---

[9] This provision required minor-party candidates to file a list of precinct-convention participants totaling at least one percent of the total number of votes received by all candidates for governor in the last Texas gubernatorial election. *Id*. at § 181.005(a). In 2004, this number was approximately 45,000.

major-party candidates seeking placement on the primary-election ballot. *See* Tex. Elec. Code Ann. §§ 141.041, 172.021(a), (b), 172.024, 172.025. But whereas this filing fee/signature petition requirement applies to major-party candidates seeking placement on the primary-election ballot, the plain language of section 141.041 makes its requirements applicable only to those minor-party candidates that are nominated at the convention and seek placement on the general-election ballot. *Compare id*. § 172.021 *with id.* § 141.041. Considered altogether, this regulatory scheme creates a stricter gatekeeping mechanism with respect to major-party candidates than minor-party nominees and counsels against the conclusion that section 141.041 imposes severe restrictions. *See Tex. Indep. Party v. Kirk*, 84 F.3d 178, 187 (5th Cir. 1996) (where minor parties and independent candidates challenged certain restrictions, the court noted that the restrictions were "not more burdensome than what is required of the major parties"); *see also Nader*, 332 F. Supp. 2d at 988-89.

Moreover, even considered on its own, section 141.041's filing fee and signature requirements are not extreme. The filing fees range from $75 for the office of county surveyor to $5,000 for a United States senator. *See* Tex. Elec. Code Ann. §§ 141.041(b), 172.024(a)(1), (16). With respect to the signature petition, nominees must obtain 5,000 signatures for a statewide office or a maximum of 500 signatures for a district, county, or precinct office. *See id*. §§ 141.041(e), 172.025. These requirements do not invoke *Burdick*'s "severe restriction" classification. *Contra Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1365-66 (N.D. Ga. 2016); *Nader v. Brewer*, 531 F.3d 1028, 1036 (9th Cir. 2008).

To further support their contention that section 141.041 is discriminatory, Appellees point out that while the fees paid by major-party candidates are paid to the parties' state or county chairs, the fees from minor-party candidates are paid to

the Secretary of State or the county judge and are credited to either the state or county general fund. *See* Tex. Elec. Code Ann. §§ 141.041(c), (d), 173.061-.063. Furthermore, signature petitions from major-party candidates are filed with the parties' state or county chairs, who decide whether the petitions are sufficient. *See id*. §§ 171.021(b), 172.022(a)(1)(2), 172.028(a). In contrast, signature petitions from minor-party candidates are submitted to the Secretary of State or the county judge. *See id*. § 141.041(a)(2).

These differences do not alter our conclusion. Although certain details pertaining to the implementation of the filing fee/signature petition requirements differ between major and minor parties, these differences do not disproportionately increase the burden on a minor-party nominee's compliance. The thrust of the requirement remains the same: either pay a filing fee or submit a signature petition for placement on the general-election ballot. *See id*. § 141.041. This requirement does not constitute a severe restriction.

### ii. The State's Regulatory Interests

Concluding the character and magnitude of the asserted injury is reasonable and non-discriminatory, we turn to "the precise interests put forward by the State as justifications for the burden imposed by its rule." *See Burdick*, 504 U.S. at 434. Here, the State put forward the interests of preventing "voter confusion, ballot overcrowding, or the presence of frivolous candidacies." These precise interests outweigh the character and magnitude of Appellees' alleged injuries. *See Anderson*, 460 U.S. at 788. In analyzing the relative importance of the State's interests, we acknowledge the State need not produce empirical evidence showing that the harm the statute is designed to avoid has actually occurred. *Hodges*, 92 S.W.3d at 496 (citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 195-96 (1986)). "Moreover, a statute does not fail merely because it is underinclusive and does not eliminate all

20

types of conduct that could produce the same evil to which the statute is directed." *Id*. at 496-97.

Hughs also asserts that section 141.041 is justified by the State's interest in "requir[ing] candidates to show a modicum of support in order to have their names on the ballot." Other courts have cited this interest as a justification for a state's ballot access restrictions. *See, e.g., Tex. Indep. Party*, 84 F.3d at 186 ("the State has a legitimate goal of requiring a demonstration of sufficient public support to gain access to the ballot"); *Risner*, 444 S.W.3d at 338 ("the State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot") (internal quotation omitted). Hughs's asserted interests bear a reasonable relationship to the restrictions imposed by section 141.041 and are a rational basis therefor, particularly where the statutory scheme provides prospective candidates with a choice between (1) demonstrating a modicum of public support via signatures or (2) demonstrating either (a) a modicum of public support via the raising of a filing fee or (b) commitment to being a *bona fide* candidate via payment of a filing fee. *See Swanson v. Worley*, 490 F.3d 894, 911 (11th Cir. 2007) ("[t]his Court has previously recognized that signature requirements promote the important state interest of ensuring that only bona fide independent candidates with a measure of support gain ballot access").

Finally, we must take into account the extent to which such governmental interests "make it necessary to burden the plaintiff[s'] rights." *Anderson*, 460 U.S. at 789. Here, a modicum of public support can be evidenced via supporters' signatures or supporters' donations and Appellees have pointed us to no alternative methods to evidence such support. In the event such signatures or donations are unavailable, candidates can still evidence their *bona fide* candidacies by paying a filing fee; similarly, Appellees have pointed us to no alternative methods. Therefore,

21

the government's apparent interests make it necessary to reasonably burden plaintiffs' rights via sufficient signatures or a filing fee.

The statutory scheme at issue is not unconstitutional because (1) the governmental interests at issue outweigh the character and magnitude of the harm, (2) it is necessary to reasonably burden Appellees' rights to promote those interests, (3) the statutory scheme at issue does not unreasonably burden Appellees' rights, and (4) Appellees have failed to provide any proposed alternatives capable of furthering the State's interests in preventing "voter confusion, ballot overcrowding, or the presence of frivolous candidacies" by requiring candidates to show they have a modicum of support. The justifications proffered by Hughs for section 141.041's restrictions are sufficient under the standard announced in *Anderson* and *Burdick* to support reasonable, nondiscriminatory restrictions and we hold that these legitimate interests are sufficient to outweigh the burdens imposed by section 141.041 on minor parties and their nominees. Therefore, Appellees did not assert a viable constitutional claim as necessary to waive the State's sovereign immunity.

## 2. Violations of the Texas Constitution

Appellees also argue section 141.041's filing fee/signature petition requirement violates the Texas Constitution's prohibition against special laws. That section states as follows:

(a) The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law . . . .

(b) [I]n all other cases where a general law can be made applicable, no local or special law shall be enacted . . . .

Tex. Const. art. 3, § 56(a), (b).

A special law is defined as a law "limited to a particular class of persons distinguished by some characteristic other than geography." *Ford Motor Co. v.*

22

*Sheldon*, 22 S.W.3d 444, 450 (Tex. 2000) (quoting *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 465 (Tex. 1997)). The purpose of the prohibition on special laws is to "prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible.'" *Maple Run at Austin Mun. Util. Dist. v. Monaghan*, 931 S.W.2d 941, 945 (Tex. 1996) (quoting *Miller v. El Paso Cty.*, 150 S.W.2d 1000, 1001 (Tex. 1941)).

When analyzing the constitutionality of a statute, we begin with the presumption of validity. *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex. 1974). "The 'primary and ultimate' test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class." *Robinson v. Crown Cork & Seal Co.*, 251 S.W.3d 520, 536 (Tex. App.—Houston [14th Dist.] 2006), *rev'd on other grounds*, 335 S.W.3d 126 (Tex. 2010). Before a statute will be struck down as violating the prohibition against special laws, "it must clearly appear that there is no reasonable basis for the classification adopted by the Legislature" to support the statute. *Cameron Cty. v. Wilson*, 326 S.W.2d 162, 167 (Tex. 1959).

Appellees fail to make that showing here. As discussed in detail with respect to our *Anderson/Burdick* analysis, section 141.041 imposes reasonable and non-discriminatory restrictions that are sufficiently justified by the State's interest in requiring candidates to show a modicum of support to guarantee their names will be on the general-election ballot. These are the same restrictions imposed on major-party candidates with respect to their participation in the primary election. Moreover, because section 141.041 has a narrower application, its gatekeeping effects are more limited than the analogous scheme's application to major-party candidates. Therefore, Appellees' special-laws argument is insufficient to waive sovereign immunity.

23

### 3. Ultra Vires Claims

Appellees also assert that the *ultra vires* sovereign-immunity exception applies to their claim challenging the Advisory because it conflicts with the Texas Election Code.

Sovereign immunity does not bar claims alleging that a governmental official acted *ultra vires*, or without legal authority, in carrying out her official duties. *Lone Star Coll. Sys. v. Immigration Reform Coal. of Tex.(IRCOT)*, 418 S.W.3d 263, 272 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). To come within the *ultra vires* exception to immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372. An official acts without legal authority if she exceeds the bounds of her authority or if her acts conflict with the law itself. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). If a state official exercises judgment without reference to or in conflict with the constraints of the law authorizing the official to act, such action may be properly challenged through an *ultra vires* suit. *See id.*

In other cases, plaintiffs have pleaded viable *ultra vires* claims where they alleged a government official failed to comply with a statute. *See, e.g., Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587-89 (Tex. 2015) (plaintiffs alleged the Harris County Flood District Commissioners acted *ultra vires* when they "refus[ed] to accept responsibility for repayment of AT&T's relocation costs" when "statute require[d] the District to bear the relocation costs"); *Patino v. Tex. Dep't of Ins.-Div. of Workers' Comp.*, __ S.W.3d __, 2020 WL 1265396, at *8 (Tex. App.—Houston [14th Dist.] Mar. 17, 2020, no pet.) (plaintiffs alleged the Commissioner "acted

24

beyond his statutory authority" by "removing doctors from the approved doctor list without following the protocol set forth in the statute").

We review questions of statutory construction *de novo*; our primary objective is to give effect to the Legislature's intent as expressed in the language of the statute. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). We construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context. *Id*. at 625-26. "In election cases, however, we are constrained in our interpretation by the principle that any statutory provision that restricts the right to hold office must be strictly construed against ineligibility." *Hodges*, 92 S.W.3d at 495.

In relevant part, section 141.041 states as follows:

(a) In addition to any other requirements, to be eligible to be placed on the ballot for the general election for state and county offices, *a candidate who is nominated by convention* under Chapter 181 or 182 must:

    (1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or

    (2) submit to the secretary of state for a statewide or district office or the county judge for a county or precinct officer a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.

*        *        *

(f) The secretary of state shall adopt rules as necessary to implement this section.

Tex. Elec. Code Ann. § 141.041(a), (f) (emphasis added). Setting deadlines for compliance with these provisions, the Advisory states:

Candidates seeking nomination by the convention process will also now be required to deliver a **filing fee or a completed petition in lieu**

**of filing fee**, along with a copy of their application for nomination, to the Secretary of State's office (for statewide or district offices) or the county judge (for county or precinct offices) ***by 6:00 PM on December 9, 2019***.

   a. If a candidate does not complete the petition in lieu of filing fee or pay the filing fee, ***they will not be eligible for nomination by the party convention process***, even if they have completed and submitted their application for nomination.

Election Advisory No. 2019-13 (second and third emphases added). Nominating conventions are generally held in March and April of the election year. *See* Tex. Elec. Code Ann. § 181.061(a)-(c). Therefore, the December 9, 2019 deadline prescribed in the Advisory falls approximately three months before the first convention.

Construing section 141.041 against ineligibility (*see Hodges*, 92 S.W.3d at 495), the statute limits its requirements only to those candidates that have ***actually been nominated*** at the convention. But the Advisory impermissibly expands these requirements to ***all candidates seeking nomination*** at the convention. The Advisory therefore exceeds the bounds of authority granted under section 141.041. *See Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 158.

This interpretation of section 141.041's applicability finds additional support in other provisions of the Texas Election Code. For example, section 161.008 (entitled "Certification of Nominees for Statewide and District Offices for Placement on General Election Ballot") provides as follows:

> [T]he secretary of state shall certify in writing for placement on the general election ballot the name of each ***candidate nominated*** at a primary election or convention of a political party for a statewide or district office.

Tex. Elec. Code Ann. § 161.008(a) (emphasis added); *see also id.* § 172.117(a) ("The county chair shall certify . . . the name and address of each primary ***candidate***

26

***who is nominated*** for a county or precinct office for placement on the general election ballot.") (emphasis added), § 181.068(a) ("The presiding officer . . . shall certify . . . for placement on the general election ballot the name and address of each ***candidate nominated*** by the convention.") (emphasis added). Under this section, a candidate that has been "nominated" is one who has been selected through a primary or a convention — not one that seeks the nomination. *See id*. § 161.008(a). Applying this same construction of "nominated" to section 141.041, the Advisory is plainly in conflict with the law that authorized its promulgation. Therefore, this action properly may be challenged through an *ultra vires* suit and is not precluded by sovereign immunity. *See Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 158.

In sum, Appellees did not make the showing necessary to waive sovereign immunity with respect to their claim challenging the constitutionality of section 141.041, but Appellees' claim challenging the Advisory may proceed under the *ultra vires* exception to sovereign immunity.

## III.     Temporary Injunction

The trial court's temporary injunction enjoins Hughs from enforcing section 141.041's requirements at the time of the Advisory's December 9, 2019 deadline or "at any other time." We therefore construe the injunction to enjoin the enforcement of both section 141.041 and the Advisory.

We concluded above that sovereign immunity precludes Appellees' claim challenging the constitutionality of section 141.041. Therefore, to the extent the injunction enjoins enforcement of section 141.041, the trial court lacked subject matter jurisdiction to enter the injunction.

Turning to the enforcement of the Advisory, Appellees state in their first amended petition that they seek injunctive relief under Texas Election Code section

273.081, which states:

> A person who is being harmed or is in danger of being harmed by a violation or threatened violation of this code is entitled to appropriate injunctive relief to prevent the violation from occurring or continuing.

Tex. Elec. Code Ann. § 273.081.

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *EMS USA, Inc. v Shary*, 309 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Generally, to obtain a temporary injunction, the applicant must prove a valid cause of action against the defendant, a probable right to relief, and imminent, irreparable injury in the interim. *See Butnaru*, 84 S.W.3d at 204; *EMS USA, Inc.*, 309 S.W.3d at 657. But where injunctive relief is provided for by a specific statute, this court has held that the applicant need not prove these common law elements. *See, e.g., City of Houston v. Proler*, 373 S.W.3d 748, 763-64 (Tex. App.—Houston [14th Dist.] 2012), *rev'd on other grounds*, 437 S.W.3d 529 (Tex. 2014) (concluding that Texas Labor Code section 21.258 "supersed[ed] the equitable requirements generally applicable to common-law injunctive relief"); *8100 N. Freeway Ltd. v. City of Houston*, 329 S.W.3d 858, 861 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (analyzing section 243.010 of the Local Government Code and concluding that, "when the applicant has shown a violation of a statute that authorizes injunctive relief, it need not prove imminent, irreparable injury"); *Gulf Holding Corp. v. Brazoria Cty.*, 497 S.W.2d 614, 619 (Tex. Civ. App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.) (interpreting a provision in the former Open Beach Act, the court concluded that the applicant need not show irreparable injury); *see also Cook v. Tom Brown Ministries*, 385 S.W.3d 592, 599 (Tex. App.—El Paso 2012, pet. denied) (applying Texas Election Code section 273.081, the El Paso Court of Appeals held that "the statute's express language supersedes the common law injunctive relief

28

elements such as imminent harm or irreparable injury and lack of an adequate remedy at law").

When injunctive relief is provided for by statute, we review the trial court's decision on a temporary injunction application for an abuse of discretion. *8100 N. Freeway Ltd.*, 329 S.W.3d at 861. We do not substitute our judgment for that of the trial court and may not reverse unless the trial court's action was so arbitrary that it exceeded the bounds of reasonableness. *Id.*

As discussed above, we conclude that the Advisory conflicts with section 141.041 in part by impermissibly expanding the section's requirements to all minor-party candidates seeking nomination at a convention. Considered in conjunction with Texas Election Code section 273.081, this conclusion supports the trial court's finding that Appellees "are in danger of being harmed by a violation or threatened violation" of the Election Code. *See* Tex. Elec. Code Ann. § 273.081. Therefore, the trial court did not abuse its discretion by enjoining Hughs's enforcement of the Advisory insofar as the Advisory required compliance with section 141.041's fee/petition requirements by minor-party candidates who have not been nominated by the convention process. *See 8100 N. Freeway Ltd.*, 329 S.W.3d at 861. Candidates who ultimately secured their party's nomination as a result of the convention process, however, must comply with section 141.041. The injunction thus is erroneous to the extent that it relieves candidates nominated by convention of any obligation to comply with section 141.041 at any time. Therefore, we modify the injunction's language by deleting the bolded text from the following paragraphs:

> The Court ORDERS that Defendant Hughs is temporarily enjoined from refusing to accept or rejecting applications for nomination from third-party candidates on the grounds that the applicant did not pay a filing fee or submit a petition in lieu thereof at the time of filing **or at any other time**.

29

The Court ORDERS that Defendants Hidalgo and Trautman are temporarily enjoined from refusing to accept or rejecting applications for nomination from third-party candidates on the grounds that the applicant did not pay a filing fee or submit a petition in lieu thereof at the time of filing **or at any other time**.

The Court ORDERS that Defendant Hughs is temporarily enjoined from refusing to certify third-party nominees for the general-election ballot on the grounds that the nominee did not pay a filing fee or submit a petition in lieu thereof at the time of filing **or at any other time**.

The Court ORDERS that Defendants Hidalgo and Trautman are temporarily enjoined from refusing to certify third-party nominees for the general-election election ballot on the grounds that the nominee did not pay a filing fee or submit a petition in lieu thereof at the time of filing **or any other time**.

## CONCLUSION

We affirm as modified in part the trial court's temporary injunction and reverse and remand in part for further proceedings consistent with this opinion. Appellees failed to plead a viable constitutional claim challenging section 141.041 as necessary to waive Hughs's sovereign immunity. Subject matter jurisdiction over that claim is therefore lacking as a matter of law and the trial court erred by enjoining section 141.041's enforcement. But Appellees' claim challenging the Advisory constitutes an *ultra vires* claim that is not barred by sovereign immunity and we modify the trial court's temporary injunction as set forth above.

Our December 20, 2019 stay order is lifted.

Due to the time-sensitive nature of this matter, the Court will not entertain motions for rehearing. *See* Tex. R. App. P. 2.

30

/s/ Meagan Hassan<br>Justice

Panel consists of Justices Christopher, Jewell, and Hassan.